# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROADWAY EXPRESS, INC. | ) ) |
| Defendant. | ) ) Case No. 06 C 4805 |
| WILLIAM BANDY, TOBY LEE, LUSHAWN SMITH, MARK WILLIAMS, CLARENCE STOKES, FRED THOMPSON, CLARENCE ROYSTER, ANTAWON L. MARSHAL, NERVILLE COX and CLEOPHUS MARSHAL, | ) Magistrate Judge Nan R. Nolan ) ) ) ) ) ) |
| Intervening-Plaintiffs | ) ) |
| v. | ) ) |
| ROADWAY EXPRESS, INC. | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this employment discrimination action, Defendant Roadway Express ("Roadway") moves to dismiss in part the class complaint of Intervening Plaintiffs William Brandy, Toby Lee, LuShwan Smith, Mark Williams, Clarence Stokes, Fred Thompson, Clarence Royster, Antawon Marshal, Nerville Cox, and Cleophus Marshall pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated, Roadway's Motion is granted in part and denied in part.

## I. Procedural Background

On April 16, 2003, Kenneth Comer, a dockworker employed by Roadway, filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that "[o]n or about April 15, 2001 and continuing I, and Blacks as a class, have been subjected to on going racial harassment at Respondent's Chicago Heights Terminal in the form of racial comments and actions." The April 16, 2003 charge also stated: "I believe that I, and Blacks as a class, have been discriminated against, because of our race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended." On August 4, 2005, Comer filed a second charge of discrimination alleging that he was discharged on the basis of his race and in retaliation for his filing a previous charge of discrimination.

On September 22, 2005, the EEOC issued a determination letter related to Mr. Comer's two EEOC charges. The determination letter stated the EEOC determined that:

> [T]he evidence obtained in the investigation established reasonable cause to believe that [Roadway] discriminated against a class of employees, including Charging Party, because of their race, Black, in that they were subjected to racial harassment, in violation of Title VII. [The EEOC] also determined that [Roadway] discriminated against a class of employees, including Charging Party, because of their race, Black, in that they were subjected to different terms and conditions of employment, in violation of Title VII.

On September 6, 2006, Plaintiff EEOC filed this action against Roadway alleging that since at least 2000, Roadway had engaged in unlawful employment practices including subjecting Kenneth Comer and a class of Black employees to harassment and different terms and conditions because of their race. The EEOC further alleged that the "[t]he unlawful employment practices complained of above were intentional." Doc. # 1 at ¶ 13.

On December 1, 2006, Comer was granted leave to intervene as an individual plaintiff in the EEOC's action. Comer's complaint in intervention alleged that Roadway subjected

him and other African-American employees to racial harassment at its Chicago Heights facility and unlawfully discharged him because of his race and in retaliation for complaining of racial harassment. On March 29, 2007, the Court granted the parties' stipulation to voluntarily dismiss Comer's complaint in intervention with prejudice.

On April 10, 2007, William Bandy, Toby Lee, LuShawn Smith, Mark Williams, Clarence Stokes, Fred Thompson, Clarence Royster, Antawon Marshal, Nerville Cox, and Cleophus Marshall ("Intervening-Plaintiffs") were granted leave to intervene in this action. Intervening-Plaintiffs filed a class action complaint individually and on behalf of all other similarly situated African-American dockworkers at Roadway's Chicago Heights and/or Elk Grove facilities. The Intervening-Plaintiffs seek to represent a class of African-American employees for alleged violations of Title VII and Section 1981. The Intervening-Plaintiffs allege that "[e]ach of the representative plaintiffs and class members assert claims arising out of the same unlawful conduct as that alleged in Mr. Comer's timely EEOC charge[.]" Intervening-Plaintiffs allege that they have exhausted their administrative remedies under Title VII based on Mr. Comer's April 16, 2003 charge alleging that "he and Blacks as a class have been subjected to ongoing racial harassment and discrimination by defendant." Doc. 48 at ¶ 24. Intervening-Plaintiffs also allege that the EEOC's investigation found reasonable cause to believe that Roadway discriminated against a class of black employees in that they were subjected to racial harassment and to different terms and conditions of employment. Doc. 48 at ¶ 25.

The Intervening-Plaintiffs' Complaint alleges six claims: racially hostile work environment in violation of Title VII and Section 1981 (Counts 1 & 2); intentional discrimination with respect to job assignments in violation of Title VII and Section 1981

(Count 3); disparate impact discrimination with respect to job assignments in violation of Title VII (Count 4); intentional discrimination with respect to discipline in violation of Title VII and Section 1981 (Count 5); and disparate impact discrimination with respect to discipline in violation of Title VII (Count 6).

Roadway's current motion argues that the Intervening-Plaintiffs' claims for disparate impact discrimination with respect to job assignments and discipline under Title VII (Counts 4 and 6) should be dismissed because the Intervening-Plaintiffs failed to exhaust their administrative remedies. Roadway also argues that to the extent that any of Intervening-Plaintiffs' Title VII claims in Counts I and 3-6 relate to conduct at Roadway's Elk Grove Village facility, those claims are beyond the scope of the underlying EEOC charge and should be dismissed for failure to exhaust administrative remedies.

## II. Discussion

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. Gibson v. Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a) requires only an identification of the basis of jurisdiction and a "short and plain statement of the claim showing that the pleader is entitled to relief." Generally, a "short and plain statement" exists "when the complaint pleads a 'bare minimum [of] facts necessary to put the defendant on notice of the claim so that he can file an answer.'" Christensen v. County of Boone, Illinois 483 F.3d 454, 458 (7th Cir. 2007). A complaint need not plead "detailed factual allegations," but the allegations it does include "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 127 S.Ct. 1955, 1964-65 (2007). In reviewing a motion to dismiss, the court takes as true all factual allegations in the plaintiff's complaint and draws all reasonable inferences in his favor.

Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 502 (7th Cir. 1998).

As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." Cheek v. Western and Southern Life Ins. Company, 31 F.3d 497, 500 (7th Cir. 1994). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employe[r] some warning of the conduct about which the employee is aggrieved." Id. (citations omitted). Because employees often file EEOC charges without the assistance of a lawyer, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." Id.

The test for determining whether an EEOC charge encompasses the claims in the complaint is whether "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." Cheek, 31 F.3d at 500. To meet this standard, the Seventh Circuit requires, at a minimum, that the charge and the complaint describe the same conduct and implicate the same individuals. McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 481 (7th Cir. 1996) (quoting Cheek, 31 F.3d at 501).

### A.  Disparate Impact Claims Regarding Job Assignments and Discipline

Roadway contends that Intervening-Plaintiffs failed to exhaust their administrative remedies with respect to their disparate impact claims related to job assignments and discipline. In Noreuil v. Peabody Coal Co., 96 F.3d 254 (7th Cir. 1996), the Seventh Circuit held that a disparate impact claim of age discrimination was not like or reasonably related

to a claim of retaliatory discharge under the ADEA. The Noreuil court noted that a disparate impact claim is conceptually distinct from an ordinary discrimination charge of disparate treatment. Id. at 258. A disparate treatment claim "turns on the employer's intent" and the "relevant question is whether the employer's adverse employment decision was motivated by the plaintiff's" protected characteristic. Id. "Disparate impact, on the other hand, does not necessitate a showing of discriminatory intent at all, but rather it requires statistical correlation evidence demonstrating that a specific employment practice of the defendant has a disproportionately negative effect on members of the plaintiff's protected class." Id.

Noreuil did not hold, however, that a disparate impact claim could never fall within the scope of a disparate treatment charge. Rather, the Seventh Circuit recognized that Noreuil's retaliatory discharge claim would have been a sufficient administrative predicate to his disparate impact age discrimination claim if the factual relationship of the claims was "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the remedial purposes of the Act." Noreuil, 96 F.3d at 259.

Comer's second charge alleges, among other things, that he was discharged because of his race. Intervening-Plaintiffs' complaint alleges that under Roadway's subjective disciplinary system, black employees are given disproportionately more disciplinary letters and receive harsher punishments, including suspensions and terminations, than non-black employees. The scope of the EEOC's investigation was broader than Comer's second charge suggests. Although Comer's second charge did not mention a neutral Roadway disciplinary policy that impacted black employees more severely, Comer's second charge led to an actual investigation of Roadway's treatment of

other black employees and a finding of class-wide discrimination against black employees with respect to terms and conditions of employment. Where there is evidence of a pattern of discrimination against black employees, there may be reasonable grounds to infer that individual decisions were made pursuant to a broad-based employment policy or practice which has a disparate impact on black employees. The examples of class-wide race discrimination uncovered during the EEOC's investigation may reasonably suggest that Roadway's discipline determinations are subjective, which is the basis for Intervening-Plaintiffs' disparate impact theory. For their disparate impact claim, Intervening-Plaintiffs allege that Roadway uses overly subjective practices with respect to disciplinary actions including terminations that have a disparate impact on black employees which cannot be justified by business necessity. Drawing all inferences in Intervening-Plaintiffs' favor, the Court concludes that a disparate impact investigation into subjective discipline practices might reasonably be expected to grow out of the facts that Comer did allege regarding his racially discriminatory discharge and the EEOC's actual investigation into class-wide discrimination based on race with respect to terms and conditions of employment.

While the Seventh Circuit has said that the relevant inquiry is what investigation could reasonably be expected to grow from the charge and not the breadth of the EEOC's actual investigation, "the investigation may help define the scope of the charge." Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127-28 (7th Cir. 1989); see also Clark v. Kraft Foods, Inc., 18 F.3d 1278, 1280 (5th Cir. 1994) (stating "[a]lbeit mindful that the actual scope of an EEOC investigation does not determine whether a claim is exhausted, we are also mindful that investigation of a particular claim creates a strong inference that such a claim was presented."). The Seventh Circuit's general statement in Schnellbaecher that the extent of

the EEOC's actual investigation is not the relevant factor in determining the permissible scope of a judicial complaint of employment discrimination should not apply to the present case because Schnellbaecher involved an actual EEOC investigation which was much narrower than the allegations in the complaint. Schnellbaecher, 887 F.2d at 128 (holding "[b]ecause *both* the EEOC charge and the ensuing investigation were insufficient to put the defendants on notice of any intention of the plaintiffs to make allegations of class-wide discrimination in their complaint, the district judge was correct in dismissing the charges of class-wide discrimination.") (emphasis added). When the EEOC's actual investigation is broader than the underlying charge and the employer has notice of the nature of the broader claims and an opportunity to conciliate those claims, the purposes behind the exhaustion of administrative remedies requirement are met and the employee should not be barred from filing a judicial complaint addressing the broader investigated claims or claims reasonably related to the investigated claims.

Roadway does not contend that the fact that Comer's second charge alleged only individual acts of discrimination prevents the Intervening-Plaintiffs from making allegations of class-wide discrimination. Again, the EEOC's ensuing investigation of Comer's second charge found reasonable cause to believe Roadway engaged in class-wide discrimination. The EEOC's determination letter stated that Roadway "discriminated against a class of employees, including Charging Party, because of their race, Black, in that they were subjected to different terms and conditions of employment, in violation of Title VII." The EEOC invited Roadway to participate in conciliation regarding the class claims. To allow Intervening-Plaintiffs to bring a class-wide disparate impact claim based on Roadway's disciplinary system would not frustrate the basic purposes of the scope of the charge rule

because Roadway was given "some warning" of the collective nature of the claims and the EEOC and Roadway had an "opportunity to settle the dispute through conference, conciliation, and persuasion." Cheek, 31 F.3d at 500.

Intervening-Plaintiffs' intentional discrimination and disparate impact claims based on job assignments, however, are not reasonably related to Comer's EEOC charges. Intervening-Plaintiffs allege that Roadway maintained an overly subjective practice and policy of job assignments that was intended and had the effect of discriminating against black employees. Comer's charges did not allege that Roadway discriminated against him by assigning him more difficult loads. Comer did not mention job assignments in his charges. Even when interpreted as liberally as possible in Intervening-Plaintiffs' favor, Comer's charges cannot be read to include allegations based on discriminatory job assignments. Comer's April 16, 2003 EEOC charge alleged racial harassment. Comer's original charge simply states that since April 15, 2001, he and a class of black employees had "been subjected to on going racial harassment at Respondent's Chicago Heights Terminal in the form of racial comments and actions." Comer's August 4, 2005 charge alleges that he was given a drug and alcohol test and terminated because of his race and in retaliation for filing his original charge. Intervening-Plaintiffs' discrimination claims based on job assignments are factually different than anything mentioned in Comer's charges. Because Comer's charges failed to give Roadway notice of the factual basis of the race discrimination claims based on job assignments in Intervening-Plaintiffs' complaint and failed to afford the EEOC an opportunity to investigate the claims, Intervening-Plaintiffs' claims for discrimination with respect to job assignments are dismissed for failing to exhaust administrative remedies.

### B. Claims Related to Roadway's Elk Grove Village Facility

Roadway contends that the Intervening-Plaintiffs' claims of racially hostile work environment, intentional discrimination with respect to job assignments and discipline, and disparate impact discrimination with respect to job assignments and discipline under Title VII should be dismissed to the extent that they seek relief for allegations related to Roadway's facility located in Elk Grove Village, Illinois. Roadway points out that Comer's underlying charge of discrimination filed on April 16, 2003 alleged racial harassment at Roadway's "Chicago Heights Terminal." As such, Roadway says that the Intervening-Plaintiffs' allegations related to Roadway's Elk Grove Village facility are not within the scope of claims like or reasonably related to Comer's allegations nor would such allegations be reasonably likely to be investigated as a result of Comer's original charge.

Intervening-Plaintiffs' allegations of racial harassment at Roadway's Elk Grove facility are sufficiently related to Comer's charge of class-wide racial harassment at its Chicago Heights facility to be considered in this litigation. Comer's April 16, 2003 charge alleged that Blacks as a class had been subjected to ongoing racial harassment at Roadway's Chicago Heights Terminal in the form of racial comments and actions. In their complaint, Intervening-Plaintiffs allege that Roadway maintained, fostered, and tolerated a racially hostile environment at its Chicago Heights and Elk Grove Village facilities. Intervening-Plaintiffs further allege that Roadway has a policy and practice of refusing to investigate complaints of racial discrimination, refusing to take effective action after discovering racial discrimination, refusing and failing to train employees in ways to avoid racial harassment, refusing to adopt an effective non-discrimination grievance procedure and actively discouraging the filing of complaints of racial harassment and retaliating against those

employees who do file such complaints. Doc. 48 at ¶ 64. Intervening-Plaintiffs also allege that Roadway's anti-harassment procedure is ineffective and intimidating because it requires employees to present any complaints of racial harassment or discrimination in writing to Roadway's Office of General Counsel in Akron, Ohio before any investigation or action to remedy the complaint can take place. Doc. 48 ¶ 26.

The EEOC's investigation of other Roadway facilities, including its Elk Grove Village facility located approximately 50 miles away from its Chicago Heights facility, could reasonably be expected to grow out of Comer's class-wide charge of racial harassment. Roadway's anti-harassment policy presumably applies to all employees regardless of work location. Once the EEOC investigated Comer's allegations of class-wide racial harassment at Roadway's Chicago Heights facility, it would have been reasonable for the EEOC to question the effectiveness of Roadway's harassment prevention policy in general and consider the treatment of other allegations of racial harassment in the same geographic area during the same general time period. Moreover, the EEOC's finding of racial harassment against a class of black employees was not limited to Roadway's Chicago Heights facility. The EEOC's determination letter gave Roadway notice that if conciliation was unsuccessful, a racial harassment lawsuit by a class of black employees without regard to work location was likely. It is therefore not unfair or inconsistent with the purposes of the charge requirements of Title VII to allow Intervening-Plaintiffs' claims of racial harassment related to Roadway's facility in Elk Grove Village.

The Intervening-Plaintiffs' claims for intentional discrimination and disparate impact discrimination with respect to discipline at Roadway's Elk Grove Village facility are reasonably related to the claims of discrimination specified in Comer's second charge of

discrimination. Comer's August 4, 2005 charge alleged that he was discharge because of his race. Intervening-Plaintiffs allege that Roadway has an overly subjective practice and policy of discipline that is intended to and has the effect of discriminating against black employees. The EEOC investigated whether black employees as a class were treated differently. The EEOC's investigation would have included investigation of any disciplinary policy or practice having a wide ranging effect on black employees. The EEOC's ensuing investigation and determination were sufficiently broad to put Roadway on notice of a potential class-action challenging its overall disciplinary system.

### III. Conclusion

For these reasons, Roadway's Motion to Dismiss in Part Intervening-Plaintiffs' Class Complaint [52] is granted in part and denied in part. Intervening-Plaintiffs' claims of discrimination with respect to job assignments (part of Count 3 and Count 4) are dismissed for failure to exhaust administrative remedies.

**E N T E R :**

*Nan R. Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Dated: July 31, 2007**